| | AUSA: Mark Chasteen | Telephone: (313) 226-9555 |
|---|---|---|
| AO 91 (Rev. 11/11)  Criminal Complaint | Special Agent: Julia MacBeth | Telephone: (313) 919-1373 |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
v.
**KESHONA MOOREHEAD**

Case No.   Case: 2:22−mj−30124
Assigned To : Unassigned
Assign. Date : 3/8/2022
CMP: SEALED MATTER (MAW)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 6 – April 21, 2021__ in the county of __Oakland__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §1343 | Wire Fraud |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

Julia MacBeth- Special Agent
Printed name and title

Sworn to before me and signed in my presence and/or by reliable electronic means.

Date: __March 8, 2022__

City and state: __Detroit, MI__

_____
Judge's signature

Elizabeth A. Stafford - U.S Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF A COMPLAINT

I, Julia MacBeth, Special Agent for the Federal Bureau of Investigation, being duly sworn, state as follows:

## INTRODUCTION AND AFFIANT BACKGROUND

1. I am a Special Agent of the FBI and, as such, an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. I am empowered to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code.

2. I have been employed by the FBI since May 2016. Prior to joining the FBI, I was a Federal Air Marshal from December 2010 until April 2016. I earned a Bachelor's degree in criminal justice from Western Michigan University and a Master's degree in criminal justice from Tiffin University. I have received law enforcement training at the Federal Law Enforcement Training Center (FLETC) and the FBI Academy. During my employment with the FBI, I have investigated federal crimes involving mail fraud, wire fraud, money laundering, investment fraud, identity theft, and various other criminal matters. At all times during the investigation described in this affidavit, I have been acting in an official capacity as a Special Agent of the FBI.

## PURPOSE OF AFFIDAVIT

3. This affidavit is made in support of a criminal complaint and arrest warrant for KESHONA MOOREHEAD of violations of Title 18, U.S.C. §1343 (Wire Fraud).

4. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that KESHONA MOOREHEAD, resident of the Eastern District of Michigan, is responsible for devising and perpetrating a scheme to defraud a financial institution and the Small Business Administration's Paycheck Protection Program, within the Eastern District of Michigan. There is also probable cause to believe that this scheme involved the use of wire transactions to execute the fraud.

5. This affidavit is submitted for securing a criminal complaint and arrest warrants; therefore, this affidavit does not contain every fact that I have learned during the course of the investigation. I have only set forth the facts necessary to establish probable cause to believe that MOOREHEAD violated the statute identified above. The information contained in this affidavit is based upon my personal knowledge, training and experience, as well as the combined knowledge, training and experience of other law enforcement officers and agents with whom I have had discussions.

6. Title 18, U.S.C. § 1343 criminalizes the use of interstate wire communications for the purpose of executing or attempting to execute any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

## BACKGROUND OF THE PAYCHECK PROTECTION PROGRAM

7. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

8. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. To be a qualified business, certain criteria must be met, such as being in operation on February 15, 2020 and not permanently closed. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in

order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses. The maximum amount which could be claimed for a self-employed individual is $100,000, which would equate to $8,333.33 monthly and a maximum loan amount of $20,833.

9. A PPP loan application must be processed by a participating lender. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

10. PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated

period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

11. In 2021, SBA allowed certain eligible borrowers that previously received a PPP loan to apply for a Second Draw PPP loan with the same general loan terms as their First Draw PPP loan. Second Draw PPP loans can be used to help fund payroll costs, including benefits. Funds can also be used to pay for mortgage interest, rent, utilities, worker protection costs related to COVID-19, uninsured property damage costs caused by looting or vandalism during 2020, and certain supplier costs and expenses for operations. A borrower is generally eligible for a Second Draw PPP loan if the borrower: previously received a First Draw PPP loan and will or has used the full amount only for authorized uses, has no more than 300 employees, and can demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020.

## ADDITIONAL BACKGROUND INFOMRATION

12. Harvest Small Business Finance LLC is a lending intuition headquartered in Laguna Hills, California. Harvest Small Business Finance disburses all PPP loans via Fedwire from East West Bank, which is also headquartered in California.

13. Fedwire is an electronic funds-transfer service that banks, businesses and government agencies use for same-day transactions provided by the Federal

Reserve Banks. Each transaction is processed individually and via a highly secure electronic network.

## PROBABLE CAUSE

14. Around May 2020, the FBI and US Postal Inspector Service (USPIS) became aware that MOOREHEAD had applied for and received two PPP loans under her name as a self-employed individual. Subsequent investigative activities conducted by the FBI and USPIS identified multiple PPP loans received by MOOREHEAD for a business which does not appear to have any legitimate business dealings and were applied for using falsified tax records.

15. According to records provided by Harvest Small Business Finance, a PPP Borrower Application Form was filed on March 19, 2021, by MOOREHEAD to Harvest Small Business Finance Inc online. The application requested a loan of $20,833 for the purpose of payroll costs. MOOREHEAD listed herself as a self-employed individual doing business as KESHONA MOOREHEAD with an average monthly income of $8,333.33. The year of establishment for MOOREHEAD's self-employed business listed on the application was January 2020. The application did not list the name of MOOREHEAD's company. This application was digitally signed by MOOREHEAD as the authorized representative of the applicant. This loan was funded and disbursed on April 08, 2021.

16. Less than a month later, on April 10, 2021, MOOREHEAD submitted a Second Draw Borrower Application Form online to Harvest Small Business Finance Inc. The loan requested another $20,833 for the purpose of payroll costs. MOOREHEAD listed herself as a self-employed individual with an average monthly income of $8,333.33, with a gross income of $246,720. This application did not list the name of MOOREHEAD's company. This application was digitally signed by MOOREHEAD as the authorized representative of the applicant. This loan was funded and disbursed on April 21, 2021.

17. The same Internal Revenue Service (IRS) tax records were provided by MOOREHEAD as supporting documents for both of the applications. The tax forms consisted of two Schedule C (IRS Form 1040): Profit or Loss from Business for a Sole Proprietorship forms for two different businesses. The first 1040 form was a 2019 filing for an internet retail sales business, FOREVER INVESTING LLC located in Macomb, MI. The form reports the gross income for FOREVER INVESTING LLC in 2019 was $110,000. The name of the proprietor is MOOREHEAD. The second 1040 form was a 2019 filing for a hairstylist business, MOOREHEAD STYLES, located in West Bloomfield, MI. The form reports the gross income for MOOREHEAD STYLES in 2019 was $136,720. The forms were for year 2019 tax returns, though according to

the PPP loan applications the companies were not established until January of 2020.

18. According to the Internal Revenue Service (IRS), no tax returns, to include Schedule C 1040 forms, were filed for FOREVER INVESTING LLC in 2019 or 2020. Therefore, the Schedule C form submitted to Harvest Small Business Finance to obtain two PPP loans by MOOREHEAD was falsified and not a legitimately filed tax record.

19. According to the State of Michigan's Department of License and Regulatory Affairs, there are no records for company MOOREHEAD STYLES.

20. The articles of incorporation for FOREVER INVESTING LLC filed by MOOREHEAD states the purpose of the company was the "purchase, sale and investment of real estate [sic]". There was no mention of an internet retail company as indicated as the purpose of the company on the PPP loan application.

21. According to the State of Michigan's Department of License and Regulatory Affairs, FOREVER INVESTING LLC was organized on February 27, 2020, by MOOREHEAD. Additionally, the FOREVER INVESTING LLC JP Morgan Chase business account ending in 1770 was opened by MOOREHEAD on February 27, 2020. Both of the PPP Borrower Application Forms submitted by and signed by MOOREHEAD to Harvest Small Business

Finance state that "The Applicant was in operation on February 15, 2020…" even though the company was not registered, and bank accounts had not been established by that date.

22. According to records provided by JP Morgan Chase Bank, on April 8, 2021, the JP Morgan Chase business checking account ending in 1770, titled FOREVER INVESTING LLC, received an incoming wire transfer for $20,833 from Harvest Small Business Finance for the purpose of a PPP loan causing an interstate wire transfer of the funds from the East West Bank account held in the State of California ultimately to the Eastern District of Michigan, where a portion of the funds were used. On April 21, 2021, a second wire transfer of $20,833 was transferred to account ending in 1770 from Harvest Small Business Finance for the purpose of a PPP loan, again causing an interstate wire transfer of funds.

23. Monthly bank statements provided by JP Morgan Chase showed that account ending in 1770, titled FOREVER INVESTING LLC, had very little account activity leading up to the two PPP loan deposits in April 2021. A review of the account did not show any legitimate business transactions indicative of a hair stylist business, or a retail business as specified on the PPP loan applications. There were multiple months where the business account was completely inactive except for monthly bank service fees.

24. Following the deposit of the PPP loans, a large portion of the funds were transferred to a personal JP Morgan Chase Bank account in the name of MOOREHEAD where purchases were made at a Michigan gun store and other high-end retail stores. Additionally, the loans appeared to fund a trip to Orlando, Florida where purchases were made at Sea World, Universal Studios, and Airbnb.

25. During the course of this investigation, it was discovered MOOREHEAD had filed other PPP loan applications containing conflicting information, which were ultimately declined. MOOREHEAD submitted a PPP loan application with JP Morgan Chase Bank on March 6, 2021, for business FOREVER INVESTING LLC. On this application MOOREHEAD made contradictory statements that FOREVER INVESTING LLC was established on February 1, 2020, had three employees on payroll and had an average monthly payroll of $8,000. Attached to the application was the same fabricated Schedule C IRS form for year 2019 taxes, as refenced above, even though according to her application, FOREVER INVESTING LLC was established until February 1, 2020. This loan was declined due to not providing payroll records for the three referenced employees.

26. MOOREHEAD submitted a second PPP loan application to JP Morgan Chase on March 11, 2021. On this application MOOREHEAD changed the number

of employees to one and claimed the average monthly payroll was $7,083. This loan was denied for providing blank tax forms as supporting documentation.

27. According to documents provided by J.P. Morgan Chase, on May 26, 2020, MOOREHEAD submitted a credit application for an auto loan to purchase a Range Rover. On the application MOOREHEAD listed her employment as a full-time customer service representative for Molina Health with a yearly salary of $69,600. She indicated she had been employed there for seven years and three months. MOOREHEAD made no mention of FOREVER INVESTING INC, MOOREHEAD STYLES, or a profession of hairstylist or retail internet sales.

28. Additionally, according to MOOREHEAD's JP Morgan Chase banking records, MOOREHEAD received thousands of dollars in unemployment benefits from the government for the period of May 2020 to at least June 2021.

29. According to the State of Michigan's Department of License and Regulatory Affairs, MOOREHEAD is not a licensed cosmetologist or barber. Additionally, MOOREHEAD STYLES is not a licensed cosmetology establishment or barbershop.

30. Open-source internet checks do not reveal any results on an internet retail shop for FOREVER INVESTING Inc or MOOREHEAD STYLES. Based on my experience investigating fraud, the lack of internet and social media presence,

unfiled taxes, and the establishment of the companies after the start of the pandemic indicate these companies do not appear to have any legitimate business dealings, are not currently in operation and were fabricated for the purpose of fraud.

## CONCLUSION

31. Based on the investigation thus far, including the facts set forth above, your affiant submits that there is probable cause to believe that KESHONA MOOREHEAD executed a scheme to defraud by knowingly falsifying PPP loan applications and tax documents. MOOREHEAD used fraudulent tax forms and fictitious businesses to illegally acquire $41,666 in CARES ACT funds. In addition, while doing so, MOOREHEAD caused multiple interstate wire transmissions of funds. Therefore, your affiant believes that probable cause exists that KESHONA MOORHEAD violated Title 18, U.S.C. §1343 (Wire Fraud).

Respectfully submitted,

*[signature]*

Julia MacBeth
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence and/or by reliable electronic means.

*[signature]*

Elizabeth A. Stafford
United States Magistrate Judge